UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAREFUSION 2200, INC. and CAREFUSION 213, LLC, | ) ) |
| Plaintiffs, | ) Civil Action No.: _____ ) |
| -v- | ) COMPLAINT ) |
| ENTROTECH LIFE SCIENCES, INC., | ) ) |
| Defendant. | ) Jury Trial Demanded ) |

Plaintiffs CareFusion 2200, Inc. and CareFusion 213, LLC (collectively "CareFusion" or "Plaintiffs"), by their attorneys, for their complaint against defendant Entrotech Life Sciences, Inc. ("Defendant"), allege as follows:

## NATURE OF THE ACTION

1. CareFusion is a medical products company that sells, among other products, antimicrobial skin preparations for use in medical procedures. In 1994, CareFusion's predecessor launched a new antimicrobial product for preparing the skin for invasive medical procedures, such as surgery and vascular access procedures, that utilized as an active ingredient chlorhexidine gluconate ("CHG"), which was significantly more effective compared to past antimicrobial products. Prior to that time, most such skin preparation products utilized iodine as the chief active ingredient. CareFusion's predecessor sold the product under the mark CHLORAPREP.

2. The CHLORAPREP brand products, which have been offered continuously since 1994, are used in connection with a wide variety of medical procedures and are well-known among those in the medical industry. Sales of products sold under the brand have grown steadily

and dramatically since 1994, and are now hundreds of millions of dollars annually. This astonishing growth in sales has resulted directly from years of efforts by CareFusion and its predecessors to educate the medical industry about the benefits of CHG-containing products, and to advertise and promote its own CHLORAPREP line of products. CareFusion spends millions of dollars each year to promote its CHLORAPREP products via advertising, trade shows, and other promotional efforts.

3. In 2013, CareFusion expanded its offerings of antiseptic skin preparations and began to offer an adhesive patch dressing impregnated with CHG under the mark CHLORASHIELD. The CHLORASHIELD products also have been a commercial success, with CareFusion experiencing substantial sales over the past three years.

4. Defendant is well aware of the astonishing success that CareFusion has enjoyed with its CHLORAPREP products. Indeed, in the fall of 2008, the parties (through their predecessor or affiliated companies) began collaborating on the development of a surgical drape featuring chlorhexidine, the same active ingredient in CHLORAPREP. Surgical drapes are adhesive sheets applied to the skin to protect against infection during surgical procedures. CareFusion selected the name CHLORADRAPE for the proposed new product, but, for a number of reasons, the proposed collaboration between the parties ended in September of 2011 without the introduction of such a surgical drape.

5. In December 2011, just three months later, Defendant's predecessor company applied to register the very mark that CareFusion had selected for the parties' surgical drape, CHLORADRAPE. On information and belief, Defendant was well aware of CareFusion's selection of the CHLORADRAPE mark. Defendant's predecessor sought this registration in connection with "surgical drapes." Concomitant with the filing of that application, Defendant's

predecessor filed an application to register CHLORABOND for topical antimicrobial solutions for dermatologic use, CHLORABSORB for medical and surgical dressings, and CHLORADERM for medical and surgical dressings. In total, Defendant's predecessor sought registration for four "CHLORA"-formative marks in connection with products that were identical or highly related to those offered by CareFusion under its well-known CHLORAPREP mark.

6. In 2012, when those applications were "published" for opposition, CareFusion opposed them in the United States Trademark Trial and Appeal Board (the "Board"). On July 27, 2016, the Board refused all four registrations, finding that "there is a likelihood of confusion between Applicant's marks and Opposer's marks when used in connection with the identified goods."

7. On information and belief, in January 2016, while the opposition proceeding was pending, Defendant began using the mark CHLORADERM in connection with medical dressings. Because Defendant's use of the CHLORADERM mark in connection with medical dressings is likely to cause consumers to believe that Defendant's products originate from or are associated with or sponsored by CareFusion, as found by the Board in its recent decision, CareFusion brings this action to prevent Defendant from using the CHLORADERM mark and any other marks that are confusingly similar to CareFusion's CHLORAPREP and CHLORASHIELD marks.

8. Accordingly, CareFusion asserts claims for trademark infringement under Section 32(1) of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. §1114(1); unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a); and unfair competition and unfair business practices in violation of the state and common laws of the State of Illinois, including

Uniform Deceptive Trade Practices Act, 815 ILCS § 510. CareFusion seeks permanent injunctive relief and damages.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction over the subject matter of this action pursuant to Section 39(a) of the Lanham Act, 15 U.S.C. § 1121(a), and Sections 1331, 1338(a), and 1338(b) of the Judicial Code, 28 U.S.C. § 1331, 1338(a), and (b). The Court has supplemental jurisdiction over the state law claims under Section 1367(a) of the Judicial Code, 28 U.S.C. § 1367(a).

10. The Court has personal jurisdiction over Defendant under 735 ILCS § 5/2-209(a)(1) because, on information and belief, Defendant is transacting business in this state that concerns or relates to the use of the CHLORADERM mark in this state and in this district. Further, pursuant to 735 ILCS § 5/2-209(b)(4), personal jurisdiction is appropriate because, on information and belief, Defendant is doing business within this state.

11. Venue is proper in this district pursuant to Section 1391(b) and (c) of the Judicial Code, 28 U.S.C. § 1391(b), because Defendant is deemed to reside in this district by virtue of being subject to personal jurisdiction here and CareFusion is suffering harm in this district.

## PARTIES

12. Plaintiff CareFusion 2200, Inc. is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 3750 Torrey View Court, San Diego, California 92130. Plaintiff CareFusion 2200, Inc. also maintains an office at 75 N. Fairway Drive, Vernon Hills, Illinois 60061, at which it conducts business related to its CHLORAPREP and CHLORASHIELD brand products.

13. Plaintiff CareFusion 213, LLC is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 3750 Torrey View Court, San Diego, CA 92130. Plaintiff CareFusion 213, LLC is a wholly-owned subsidiary of Plaintiff CareFusion 2200, Inc.

14. Upon information and belief, defendant Entrotech Life Sciences, Inc. is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 409 Illinois Street, San Francisco, California 94158.

## FACTS COMMON TO ALL COUNTS

**A.    CareFusion and Its CHLORAPREP and CHLORASHIELD Marks**

15. As set out above, CareFusion and its predecessors have manufactured and distributed the CHLORAPREP line of products since 1994. The CHLORAPREP brand line of products includes a range of single-use applicators impregnated with an antiseptic skin preparation containing CHG. Medical professionals use the applicators to clean the skin with the antiseptic preparation prior to surgery and other procedures or treatments that require penetrating the patient's skin.

16. CHLORAPREP brand products were the first CHG-based antiseptic skin preparation products in the United States. Prior to their development, medical professionals generally used iodine-based skin antiseptics. Thus, when CareFusion's predecessor first offered CHLORAPREP products, it undertook to educate medical professionals about the studies demonstrating the efficacy and safety of CHG as an antiseptic. As a direct result of CareFusion's efforts, CHLORAPREP products eventually displaced iodine-based skin antiseptics as the leading type of antiseptic skin preparation used by surgeons and other medical professionals.

5

17. CareFusion sells its CHLORAPREP products to a wide variety of medical facilities, including hospitals, outpatient surgical centers, blood banks, dialysis centers, nursing homes, and home health care providers. The CHLORAPREP brand products are used in connection with a wide variety of procedures. Thus, doctors, nurses, and other medical professionals are readily familiar with the CHLORAPREP mark and the products offered thereunder.

18. CareFusion and its predecessors have invested a significant amount of time, effort, and money in advertising and promoting products sold under the CHLORAPREP mark. CareFusion's marketing efforts aim, among other things, to educate physicians about the effectiveness of CHG in killing germs and preventing infections, the advantages of the single-use delivery system utilized by CHLORAPREP products, and the proper way to use CHLORAPREP products. CareFusion utilizes various marketing channels, including print and online media and trade shows. CareFusion also advertises and promotes its CHLORAPREP products directly to doctors, nurses, and other medical professionals through publications, speakers, and CareFusion's sales force.

19. Because of the success and effectiveness of CHLORAPREP and CHLORASHIELD products (added in 2013), and CareFusion's exclusive use of CHLORA-formative marks in connection with antiseptic skin preparations, the CHLORAPREP and CHLORASHIELD marks have become well-known to consumers as identifying and distinguishing the source of CareFusion's products exclusively and uniquely. As a result, the CHLORAPREP and CHLORASHIELD marks have come to represent enormous goodwill

20. In addition to CareFusion's extensive and strong common law rights in the CHLORAPREP and CHLORASHIELD trademarks that have resulted from years of use and

extensive sales, CareFusion owns the following U.S. trademark registrations: U.S. Registration No. 1,930,248 for the mark CHLORAPREP for use in connection with "topical antimicrobial solutions" in International Class 5, which issued on October 24, 1995, and is based on a first use in commerce on June 7, 1994; U.S. Registration No. 4,052,849 for the mark CHLORAPREP for use in connection with "broad-spectrum antiseptic" in International Class 5, which issued on November 8, 2011, and is based on a first use in commerce on June 7, 1994; and U.S. Registration No. 4,488,745 for the mark CHLORASHIELD for use in connection with "antimicrobial catheter patch dressing" in International Class 5, which issued on February 25, 2014, and is based on a first use in commerce on October 24, 2013.

21.     Printouts detailing the registration information for the above marks are attached hereto as **Exhibit A**. These registrations are all valid, subsisting, and in full force and effect. Moreover, U.S. Registration No. 1,930,248 has become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and thus serves as conclusive evidence of the validity of the registered mark, of the registration of the mark, and of CareFusion's exclusive right to use the mark in commerce on or in connection with the products for which the mark is registered, as provided by Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).

B.     **Defendant's Bad Faith**

22.     Defendant is part of the family of research and development companies affiliated with Entrotech, Inc. ("Entrotech"). Entrotech identifies itself as a company that "creates original advanced materials solutions that transform business and industries worldwide."

23.     As described above, in the fall of 2008, a predecessor of CareFusion began to collaborate with an affiliate of Entrotech to develop an adhesive surgical drape containing chlorhexidine. CareFusion contemplated that the new product would be sold under the mark

CHLORADRAPE. In September 2011, however, the parties' collaboration ended without any finished product or FDA approval.

24. On December 19, 2011, just three months after the parties' collaboration ended, Entrotech applied to register four applications (collectively, the "Applications") with the USPTO:

    a. Application Serial No. 85/499,332 for the mark CHLORADRAPE for use in connection with "surgical drapes" in International Class 5;

    b. Application Serial No. 85/499,337 for the mark CHLORABOND for use in connection with "topical antimicrobial solutions for dermatologic use" in International Class 5;

    c. Application Serial No. 85/499,345 for the mark CHLORABSORB for use in connection with "medical and surgical dressings" in International Class 5; and

    d. Application Serial No. 85/499,349 for the mark CHLORADERM for use in connection with "medical and surgical dressings" in International Class 5.

25. Entrotech assigned all four applications to Defendant in July 2012.

26. CareFusion filed a Combined Notice of Opposition against the Applications with the Board, which instituted Opposition No. 91206212. In the Combined Notice of Opposition, CareFusion alleged that registration of the Applications should be denied on the ground that, when used in connection with the goods identified in the Applications, Defendant's CHLORA-formative marks were likely cause confusion with CareFusion's CHLORAPREP and CHLORASHIELD marks under Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d).

27. The parties conducted discovery, including producing documents and taking depositions. During the trial period, both parties submitted extensive evidence regarding their

use of their respective marks, including documentary evidence and trial testimony from the parties' witnesses.

28. On July 27, 2016, the Board issued its decision, in which it sustained CareFusion's opposition to the Applications on the ground that there was a likelihood of confusion between CareFusion's and Defendant's marks. The Board found that the parties' marks were similar in appearance, sound, connotation, and commercial impression. Moreover, Defendant's goods were, in part, identical to CareFusion's goods, and the goods that were not identical were closely related. These facts, combined with the strength of CareFusion's CHLORAPREP mark, established that consumers were likely to believe that Defendant's goods offered under the marks CHLORADRAPE, CHLORABOND, CHLORABSORB, and CHLORADERM originate with or are associated with or sponsored by CareFusion. The Board's decision is attached hereto as **Exhibit B**.

**C.     Defendant's Recent Use of the CHLORADERM Mark and Resulting Likelihood of Confusion**

29. In January 2016, Defendant began to use the mark CHLORADERM in connection with medical dressings containing chlorhexidine. On information and belief, the CHLORADERM brand products are intended to cover and protect wounds caused by medical devices that are inserted through the skin, such as drains and chest tubes, and thus protect against infection. On information and belief, the CHLORADERM products are being marketed and sold to the same consumers that have long used CareFusion's CHLORAPREP and CHLORASHIELD products.

30. Defendant's use of the CHLORADERM mark in connection with medical dressings is likely to cause confusion with CareFusion and its CHLORAPREP and

9

CHLORASHIELD products, as doctors and other medical professionals are likely to believe that Defendant's goods come from, are approved by, or are otherwise associated with CareFusion.

31. The CHLORADERM mark is highly similar to CareFusion's CHLORAPREP and CHLORASHIELD marks in sight, sound, connotation, and commercial impression. Both parties' marks begin with the term CHLORA, and end with a single-syllable term that suggests the use of a product.

32. Moreover, Defendant is using the CHLORADERM mark on goods that are identical or highly related to the goods for which CareFusion has long used its CHLORAPREP and CHLORASHIELD marks and for which CareFusion owns federally registered rights in its CHLORAPREP and CHLORASHIELD marks.

33. Defendant's use of its confusingly similar CHLORADERM mark commenced long after CareFusion developed strong rights in its well-known CHLORAPREP and CHLORASHIELD marks and long after CareFusion's CHLORAPREP and CHLORASHIELD marks were first registered in the USPTO.

34. Defendant is not associated or affiliated with CareFusion and has never been authorized or otherwise licensed by Defendant to use the CHLORADERM mark in connection with the sale or offering for sale of any products.

35. Defendant adopted and is using the CHLORADERM mark with full knowledge of CareFusion's prior rights in its CHLORAPREP and CHLORASHIELD marks, and, on information and belief, with the intent to trade off of the significant goodwill that CareFusion has established in its CHLORAPREP and CHLORASHIELD marks with doctors and other medical professionals.

## FIRST CLAIM FOR RELIEF
### Trademark Infringement Under Section 32(1) of the Lanham Act

36. CareFusion repeats and realleges each and every allegation set forth in paragraphs 1 through 35 above as if fully set forth herein.

37. Over many years of extensive use in connection with antiseptic skin preparations, CareFusion's federally registered CHLORAPREP and CHLORASHIELD marks have become well-known in the industry nationwide. CareFusion has established a strong reputation and substantial goodwill by reason of the success and reputation of goods sold under the CHLORAPREP and CHLORASHIELD marks, immediately indicating to doctors and other medical professionals that products featuring such marks come from, or are sponsored or approved by, CareFusion.

38. Defendant's actions described above have caused and are likely to cause confusion and mistake and to deceive doctors and other medical professionals as to the source, origin, and/or sponsorship of the CHLORADERM mark and the goods sold thereunder, and are likely to deceive doctors and other medical professionals into believing that such goods are provided, authorized, endorsed, or sponsored by CareFusion, thereby damaging CareFusion's reputation, goodwill, and sales.

39. Defendant's unauthorized use of the CHLORADERM mark and name constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

40. Upon information and belief, Defendant's infringement of the CHLORAPREP and CHLORASHIELD marks is willful and intended to reap the benefit of the goodwill of CareFusion and its marks.

41. Defendant's conduct is causing immediate and irreparable injury to CareFusion and will continue both to damage CareFusion and deceive doctors and other medical professionals until enjoined by this Court.

42. CareFusion has no adequate remedy at law.

**SECOND CLAIM FOR RELIEF**
**Unfair Competition and False Designation of Origin**
**Under Section 43(a)(1)(A) of the Lanham Act**

43. CareFusion repeats and realleges each and every allegation set forth in paragraphs 1 through 42 above as if fully set forth herein.

44. Defendant's use of the CHLORADERM mark, as alleged above, is likely to confuse, mislead, or deceive doctors and other medical professionals as to the origin, source, sponsorship, or affiliation of Defendant's CHLORADERM mark and the goods sold thereunder, and is likely to cause such doctors and other medical professionals to believe, contrary to fact, that such goods are made, provided, authorized, endorsed, or sponsored by CareFusion, or that Defendant is in some way affiliated with or sponsored by CareFusion.

45. Defendant's actions in the manner alleged above constitute a false designation of origin, false and misleading descriptions of fact, and false and misleading representations of fact, which are likely to cause confusion, mistake, and deception, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

46. Upon information and belief, Defendant's infringement of the CHLORAPREP and CHLORASHIELD marks is willful and intended to reap the benefit of the goodwill of CareFusion and its marks.

47. Defendant's conduct is causing immediate and irreparable injury to CareFusion and will continue both to damage CareFusion and deceive doctors and other medical professionals until enjoined by this Court.

48. CareFusion has no adequate remedy at law.

### THIRD CLAIM FOR RELIEF
### Unfair Competition and Unfair Business Practices Contrary to the State and Common Laws of the State of Illinois

49. CareFusion repeats and realleges each and every allegation set forth in paragraphs 1 through 48 as if fully set forth herein.

50. By its planned acts alleged herein, Defendant intends to falsely misrepresent its CHLORADERM goods as being those of CareFusion or as being otherwise associated with CareFusion. As such, Defendant is engaging in a course of unfair competition and deceptive trade practices in violation of the statutory (Uniform Deceptive Trade Practices Act, 815 ILCS § 510) and common law of the State of Illinois.

51. Defendant's conduct is causing immediate and irreparable injury to CareFusion and will continue both to damage CareFusion and deceive doctors and other medical professionals until enjoined by this Court.

52. CareFusion has no adequate remedy at law.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully demand judgment against Defendant as follows:

1. Entering judgment for Plaintiffs on each of their claims.

2. Directing that Defendant and, where applicable, its officers, directors, agents, representatives, successors, or assigns, and all persons acting in concert or in participation with any of them, be immediately and permanently enjoined from:

(a) infringing the CHLORAPREP and CHLORASHIELD marks;

(b) falsely designating the origin, sponsorship, or affiliation of their business, goods, or services;

(c) using the CHLORADERM mark, or any derivation or colorable imitation of the CHLORADERM mark, or any name or mark that is confusingly similar to the CHLORAPREP and CHLORASHIELD marks (collectively, the "Prohibited Marks"), on or in connection with Defendant's goods or services;

(d) seeking to register any Prohibited Marks;

(e) making or employing any other commercial use of any of the Prohibited Marks;

(f) making or displaying any statement or representation that is likely to lead the public or the trade to believe that Defendant's goods and services are in any manner associated or affiliated with or made, approved, endorsed, licensed, sponsored, or authorized by or are otherwise connected with Plaintiffs;

(g) using any other false designation of origin calculated or likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that Defendant's products or activities are in any way made, sponsored, licensed, endorsed, or authorized by, or affiliated or connected with Plaintiffs, or originate from Plaintiffs;

(h) doing any other acts or things calculated or likely to cause confusion or mistake in the mind of the trade or public or to lead purchasers or consumers into the belief that the products or services promoted, offered, or sponsored by Defendant emanate from or originate with Plaintiffs, or are somehow sponsored, licensed, endorsed, or authorized by, or affiliated or connected with Plaintiffs;

    (i)  engaging in any other activity constituting unfair competition with Plaintiffs; and

    (j)  aiding, assisting, or abetting any other party in doing any act prohibited by sub-paragraphs (a) through (i) above.

  3.  Directing that Defendant deliver up to Plaintiffs' attorneys for destruction all products, labels, signs, stationery, prints, packages, promotional and marketing materials, advertisements, and other materials (a) currently in its possession or under its control or (b) recalled by Defendant pursuant to any order of the Court or otherwise, incorporating, featuring, or bearing the Prohibited Marks or any other simulation, reproduction, copy, or colorable imitation thereof.

  4.  Directing that Defendant file with the Court and serve upon Plaintiffs' counsel within thirty (30) days after entry of judgment a report in writing under oath, setting forth in detail the manner and form in which it has complied with the above.

  5.  Awarding Plaintiffs such damages they have sustained or will sustain by reason of Defendant's acts of trademark infringement and unfair competition and that such sums be trebled pursuant to 15 U.S.C. § 1117.

  6.  Awarding Plaintiffs all other recoverable gains, profits, property, and advantages derived by Defendant from its unlawful conduct.

  7.  Awarding to Plaintiffs exemplary and punitive damages to deter any further willful infringement as the Court finds appropriate.

  8.  Awarding to Plaintiffs their costs and disbursements incurred in this action, including reasonable attorneys' fees pursuant to 15 U.S.C. §1117.

9. Awarding Plaintiffs interest, including pre-judgment interest on the foregoing sums.

10. Awarding to Plaintiffs such other and further relief as the Court may deem just and proper.

**PLAINTIFFS DEMAND TRIAL BY JURY ON ALL COUNTS SO TRIABLE.**

**Dated: August 19, 2016.**

        **CAREFUSION 2200, INC. and CAREFUSION 213, LLC**

        By: /s/ KevinTottis
             One of Their Attorneys

Kevin Tottis (ARDC No. 6193853)
ktottis@tottislaw.com
Monica L. Thompson (ARDC No. 6181455)
mthompson@tottislaw.com
Rachel M. Vorbeck (ARDC No. 6238297)
rmvorbeck@tottislaw.com
TOTTISLAW
One East Wacker Drive
Suite 1205
Chicago, Illinois 60601
Phone: (312) 527-1400
Fax: (312) 589-7192

John P. Margiotta (jmargiotta@fzlz.com)
Emily Weiss (eweiss@fzlz.com)
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
866 United Nations Plaza
New York, NY 10017
Tel: (212) 813-5900
Fax: (212) 813-5901